Good morning, Your Honor. I'm Patrick Whelan for Appellant CTTA. I'd like to reserve five minutes for rebuttal, please. We're back again after remand, and what I was hoping to focus on today is a limiting principle, specifically, what are the limits of the safety exception to the express preemption provision under the F-4A? And I readily concede there is a tension between this Court's prior statements saying that the preemption provision is supposed to be interpreted very broadly, and this Court and the U.S. Supreme Court's statements saying that the safety exception must be interpreted narrowly so as not to be the exception that swallows the rule. I — where that — where we strike that balance, I think, is the issue in this case. I think we can all agree that a balance that allows the exception to indeed swallow the rule is the incorrect balance. It needs to be something in between. The district court here, I think, applied an interpretation of the safety exception that effectively renders Congress's preemption provision nugatory, that there's almost nothing under the district court's mode of analysis that can't in some way be connected directly through an attenuated process to safety. A few examples to suffice. The requirement in the permit scheme that the towing company has an approved business plan. Whether I as a business have a proper plan that the police chief thinks is sufficient has no relationship to whether I'm going to be a safe operator or whether my customers are going to be safe. It just means that they are. Sotomayor, wouldn't we say those are tangential? Indeed. I would suggest they are not very related to safety at all. I would, however, suggest they do relate to prices, routes, or services, because if I am required to develop a business plan that not only satisfies me as the business owner, but the business owner. Well, I would agree that the business plan one is the furthest off. So let's go to the rest of them. Go to the rest of them, Your Honor? The rest of the provisions. Okay. I mean, we can deal with that one later, but let's deal with the other ones. Fair enough. Another one that struck me as odd was the complaint process. And the district, so it's the requirement that the towing companies have a complaint process when their customers are upset with the fact that their car being towed. The district court justified that on two alternative grounds. One, that it might, having a complaint process might diffuse confrontations between the owner of the towed vehicle and the towing company when they come to the shop to pick up their car. I'm not sure how that leads to safety, because, again, remember the premise of the district court is that the safety involved here is when you come out from a restaurant at night and your car that you parked is no longer there and now you are stranded in a perhaps unsafe location. Well, when you're already at the staff. Why isn't it just all of a piece? I mean, if you have a provision, can't you have a provision that says you have to have a way of deciding whether the provision has been violated or not? Well, I'm not sure that jives consistently with what this Court said in CTTA 1, which was you have to examine each component of the challenge plan individually. Yes, but I don't think you have to tear the whole thing apart such that, you know, you can't make effect of whatever it is you're enacting. Indeed. And isn't that the tension I'm trying to describe, Your Honor? Where do we draw the – do we view each component of the statute in isolation? As a zealous advocate, I might argue for that, but I don't think that's reasonable. Similarly, though, I don't think it's consistent to say we can look at any provision and if we can say it somehow connects or makes more effective another provision, then it's okay, because the other provision is okay, because that renders the. Well, if you don't have a complaint procedure, then you can go to court, right? Certainly, that is one option. Right. Or you can go to an arbitrator. Absolutely. All right. So there's some way to enforce whatever the provision is. So what's the problem? So they say let's – we'll enforce it this way. Instead of saying rather than having people go to court, we'd rather have them have a complaint procedure. But Congress has already said that they don't want State and local governments meddling in the business of motor carriers to that extent. Because then you couldn't go to court. Well, actually, the Supreme – the U.S. Supreme Court just last term decided that the other way, that therefore it doesn't preempt various common law causes of action. And it – but it didn't do it under the safety exception in that case. E&J towing or something to that effect. But what it said is those – those matters. In other words, if you have an otherwise valid provision, why isn't its enforcement provision go with it? Well, I guess – I guess my question would be what is the otherwise valid provision that the complaint process is hanging on to? Well, that's different. But you're going after the complaint provision separately. And pursuant to this Court's direction, yes, that is one of the provisions that I – I suggest is not related to safety. It doesn't make anyone more safe when, long after the fact of their vehicle being towed, they are allowed to go through some established complaint procedure. And what I think is interesting is the other alternative justification offered by the district court for the complaint procedure was that because the complaint procedure is in place, it will hopefully save or divert law enforcement resources from having to come to the tow shop and be the arbiters of a heated dispute. So isn't a complaint procedure, whether it's preempted or not preempted, isn't it an effective way of alerting the company to problems that may relate to safety? Well, I would suggest, Your Honor, that in talking to my clients, when customers come and have a complaint, it's not because the vehicle wasn't towed safely or anything. It's because, gosh darn it, I want my car because I've got to get to work. It's a financial issue. You towed my car, I've got to spend $400. Anybody who's ever watched Parking Wars on cable television knows that these are not simple matters. Somebody walks out and their car is being towed away, and fisticuffs can result, violence can result. If you have a complaint procedure, it may identify to the company ways in which to handle the dealings with customers that prevent or resolve these issues. I would suggest to the Court that the editors of Parking Wars don't always accurately depict the nature of the issue, at least my clients. But in any event. I didn't mean to suggest that. Not at all. Not at all. I concede that tempers can flare when someone discovers their car is gone. But that is not a safety issue. If you want to make the best argument that I can think of for the other side, it would be, well, there's a general public safety issue if there's a likelihood of violent confrontations. But remember what the statute says on the safety exception. The only thing that's saved from preemption is the regulatory authority of a State to regulate the safety of motor vehicles. Motor vehicle safety, not just general safety from whatever ills may befall you, an angry customer or the phrase is not motor vehicle safety. Everybody keeps saying that. It's safety regulation with respect to motor vehicles. Right? In other words, States can usually regulate safety and they can do it with respect to motor vehicles, which doesn't say that it has to be the safety of the motor vehicle. And so I go back to my introduction, Your Honor. What is the limiting principle? What is with respect to motor vehicles? Is it the State can regulate all of us by requiring us to have driver's license for our motor vehicles. Could the State come in and say before you can drive a personal vehicle, you have to have a business plan or a complaint process? There has to be, and would that be with respect to motor vehicles? There has to be some limit. Sotomayor, you're kind of picking the easy fruit here, but what's the, not the complaint. But what about the whole rest of the statute? You're complaining about what's in the application. You're complaining about the fees. You're complaining about the whole permitting process. Well, two answers to that. One, the kind of dissection and articulation of the provision by provision is largely at the direction of this Court's previous opinion to do the analysis in exactly that mode. But I want to hear this. That's why you have to argue provision by provision, and you're sticking to one. Okay. Let me go on. I'll go on to the fees, because let's be honest, that's what my clients are most concerned about. What are they most concerned about, the business plan? No, the fees. Okay. The fees. They're business owners. Any additional fees makes it harder to run a business. Imagine, and this is going to sound like a crazy hypothetical, but imagine the City of San Francisco was so concerned about the safety of towing that they decided to enact this very same scheme, but they did it because they were so concerned, they did it out of the general fund. Just like they fund fire and police, they said this is an important issue, we're going to fund it out of the general fund, we're not going to charge the business owners anything. Okay. Then, two or three years, and the scheme goes into effect, and it's operational, towers are complying, they're applying for permits and everything. The only thing that's different is they're not having to pay $10,000 a year. Then at some point, a budget crunch hits and the city says, well, now we need to charge a fee for this. I would say, look, if you have the authority under the F4A to promulgate the provisions and they are all, as we analyze them independently, saved from preemption, you don't need the fee. The fee doesn't do anything to service the otherwise accepted provisions. It is just a burden on the business that is covered by this scheme. Now, yes, we know that in this particular case, they enacted the fees simultaneous with the rest of the provision, but there's nothing inherent in the payment of fees in and of itself that is related to safety. All that you can say is that, well, the fees go to fund other provisions of the plan. I'll stipulate, there may be some other provisions that do relate to safety, but the The city could easily promulgate the scheme and pay for it out of any number of ways and it would just as likely impact safety positively or negatively. The other terms of art that I think bear on this and give us a clue as to what the limiting principle might be are two terms. One, from the U.S. Supreme Court in multiple F4A cases, we know that in order for the safety exception to apply, it has to be genuinely responsive to safety concerns. From this Court, we know that one of the factors that should be considered is a consideration of the, quote, record evidence. And so in order to find something genuinely responsive in light of the record evidence, I submit, and keep in mind here, we're talking about the city here trying to take So I think it's fair to say the onus should be on the party claiming the exception to show that they fit within the exception. Here, when this Court has previously said, look at the record evidence, I think that we need to insist that the legislative body enacting whatever the law or ordinance is, to base their decision on some reasonable evidence that it will, in fact, have the desired result of improving safety. I'm not going to suggest that they need to commission a study beforehand to see if a licensing scheme makes things more safe, or that they have to, after it's been in place for a while, look at the results and see if the arrests have dropped or anything like that. But they have to do something. Roberts, is your client's concern about the fact of a fee or the amount? Yes. Both. The reality here, the margins in the towing industry today are razor thin. It's almost impossible to get drivers, your paying kids, 19 and 20-year-old kids, $10 and $15 an hour to go down a freeway and change a tire with cars running by at 70 miles an hour. And when you tell them that they have to pay more money in fees, that's less money to pay these guys to do the work. And then when you tell them that virtually any type of criminal arrest will kick them off eligibility, it makes the driver pool even smaller, it's very difficult, just as a practical matter. But in order for something to be to meet the test that this Court has articulated of being, having record evidence show a meaningful relationship between the law or ordinance in question and the safety, the articulated safety concerns, you have to have something. It's not enough to simply say at the outset, we have the safety problem that we want to address as a legislative body. We're going to do X. Well, what's the authority for that with regard to lawmaking in general? I think in the general. Or preemption in general. In general, is there a rule that in order to be, to survive preemption, you have to prove whatever the asserted connection is to an exception? Is there a general rule? Well, I think in this body of preemption law, this Court and U.S. Supreme Court have suggested there is. I thought we've suggested there isn't. Where does the Supreme Court say that? Well, it has to be genuinely responsive, not merely responsive. If I'm laying in bed with my spouse and the baby cries in the other room and I tap her on the shoulder and say, hey, the baby's crying, she's going to say that is not genuinely responsive. She might use more colorful language. She's going to say go in and give the baby a bottle or change its diaper. I can't say to her, well, honey, let's first come up with a plan of how we're going to deal with the crying baby and what's the complaint process that we're going to do. No, I have to do something that really addresses the problem that I'm concerned with. And the problem that the city articulated is very clear in their ordinance. They were concerned about a very specific type of towing, illegal towing from private property. No, no, that's just the 2009 amendment. But, Your Honor, you know that any time a legislative body amends or reenacts a statute, they are reenacting the whole thing anew. And so that is their assertive basis. But they were trying to explain the amendments. I beg your pardon? But they were explaining the amendments. I mean, Judge Breyer, that's what Judge Breyer said, and he seems clearly right about that. They weren't trying to explain the whole permitting system because they weren't enacting, reenacting the whole permitting system. When the permit scheme was enacted, it was long before the Supreme Court had decided ours garage, and long before there was an articulated test of what satisfied the safety exception. Well, ours garage doesn't have an – isn't about this anyway. It's about what's the State versus local provision, and there's some discussion of the safety exception, but it doesn't say anything about what's the scope of that having to articulate a reason. But it was ours garage that gave us the genuinely responsive requirement of how you fall within the safety exception. I agree that it was only – You're saying that Judge Breyer couldn't just look at the permit, the whole scheme and say, you know, and say what the connections appear to be, it needed to have legislative statements? But doesn't it have to be based on something other than speculation, or we hope it makes things safer? We – I think – I think in the general lawmaking context, we all – we all hope that the democratic process will yield rational legislation. It doesn't always. But in the preemption context, there is a requirement. If you want to fit into the exception, you have to meet the exception. And you can't just say, we're going to say it does. And that's the end of it. We don't need to look to any evidence that it does, either before the fact or after the fact. We're just going to say it doesn't. And if we in our legislative wisdom believe in our common sense that it meets it, we're within whatever the exception we declare. I think it is incumbent upon the person, the party claiming the exemption, that they show how they fit within it. And again, going back to the fee, the fee in and of itself doesn't make anybody safer. The city can implement all of its safety concerns without charging a fee, if it really thinks it's that important. It chose to impose the fee on the towers, and we contend that part of it is clearly not related to safety. The brochures, for example, the justification for the brochures is that if a consumer gets there and is made aware of his or her rights, that that will somehow deter a tower or a towing company from behaving unethically or illegally. That's pure consumer protection that has nothing to do with safety. It doesn't make me safer now that I know my rights and I can sue or I can go through the complaint process or whatever it is. I'm no more or less safe. I may be more satisfied. Sotomayor on the whole legal system assume that it does? That once you have a law, it has to be enforceable in some fashion? I agree to that, but that doesn't relate to the safety with respect to a motor vehicle. I don't understand that. In order to claim that you fall within the safety exception, as we discussed earlier, you have to show. So in other words, the requirements there, let's suppose this was exactly about safety in your terms, i.e., was, you know, it was a law about the physical requirements for a tow truck. Got to have good brakes. Right? And then they said, and if you don't do it that way, we can prosecute you or we can fine you $500. Okay. All right. So now you're going to tear the two of them apart and say, well, the $500 fine does not advance the safety. Is that what you're going to say? No. I think in that case, I wouldn't be in this Court, Your Honor, because the California Tow Truck Association does that. But that's what you're saying. You're saying you can just take the pieces and rip them apart. I think there's a difference between a penal sum imposed, fine or something, than a fee imposed at the outset to enforce the whole regulatory scheme. Well, suppose the provision was that if somebody can file a complaint with the agents with the company if they realize that they are not, that they have an unsafe truck. That, I think, we would contend is preempted. Whether that would be enough to motivate my client to sue, in and of itself, I'm not sure. But I don't think the complaint process makes people safer. So the other one, so it's okay to have fines, but it's not okay to have some system for enforcing a chord of fines. Right. Because what the Supreme Court has said in the context of they've done it at the first stage of analysis is whether or not a particular law is tenuous or remote in terms of impacting prices, routes or service. And they usually get to it that way rather than determining that it's, that a fine is within the safety exception. In the case of the company. Do you want to take some time for rebuttal? Yes, thank you. Good morning, Your Honors. Wayne Snodgrass for the city. Ours garage tells us that the local regulation in order to fall within the safety exception to preemption must be genuinely responsive to safety concerns. Did the city and county of San Francisco require tow truck operators to paint their tow trucks pink? I don't see any connection between that and safety. Oh, did they have some justifications based upon visibility and differentiating from public safety vehicles or whatever? Surely you could construct some sort of argument that would say it's perfectly okay for a city to say tow trucks have to all be the same color or even specify the color. Again, to my mind, that would be too attenuated, and we certainly agree that it is possible for some hypothetical connection to be too attenuated. We're not claiming that safety covers everything. There are we know, for example, from the district court's ruling that safety does not cover the price cap provision which the district court struck down. Safety, as we know from the American Trucking Association litigation that's percolating along with iteration after iteration before the Ninth Circuit, safety is not the same subject conceptually as environmental concerns. What does a business plan have to do with safety? Well, what the requirements of the business plan focus on are where, these are the ones that are specifically called out in the statute, focusing on where is the storage yard going to be located, what are the hours of operation going to be, and like Rick Perry, there's a third one, but it's escaping me. So let's focus, for example, on the hours of operation. Imagine that you are a tow lot and you close up shop, your storage yard, at 9 p.m. It's reasonable to think that if that happens, there are going to be people who are out for the evening. While they're out at the restaurant, their car is towed, and then by the time that they come back to the location of the car, it's too late to even recover it. But the odd thing is that there's no standards for reviewing the business plan, and I gather no actual indication anybody actually does it. So could they say, we don't like the fact that you're not open at a certain hour, and therefore we're going to reject your application? That actually is not listed as a ground for rejection. Right, it isn't. So therefore, what's the point of the business plan? So I think the purpose of the business plan is to encourage a dialogue between the police department and the prospective business owner to try and steer it more  I mean, that does seem to me to be the weakest link in this whole thing. Another thing that the business plan might include is, are you going to have a bank credit card machine so that customers can pay by credit card? But whatever you have, nothing is enforceable. There are no standards. I mean, that seems to me to be the opposite of the complaint issue. The complaint issue is to enforce what exists. The business plan has no standards. It's not doing anything. Actually, Your Honor, with respect to the credit card machine, if the proposed business does not have and cannot obtain a credit card machine, that is a permissible ground for denial of the operator permit. So that is an example of some piece of information. Well, so they could require that they submit proof that they have an operator or a credit card machine because the statute requires they have a credit card machine, but that's different from an overall business plan. A business plan is a broader concept, but that would be one component of what it might contain.  And I'm not going to go into the details of that, Your Honor, but I'm going to say that it's not subject to preemption. We believe it's within the safety exception to preemption. Turning to the issue of fees, which counsel candidly admitted was the most important to his clients, the fees that we're talking about are classic regulatory fees. They are imposed by local governments or by the state under the police power, and what ours garage tells us is that the F4A doesn't intend to, the safety exception intends to preserve preexisting police power with respect to motor vehicles, so the police power with respect to motor vehicles includes obviously the power to regulate the conduct of the vehicles, but it also encompasses the power to impose regulatory fees to cover the costs of that regulation. And is there, does it matter, and is there some way of determining whether these fees, in fact, cover the cost and aren't being put in States' coffers? In this case, Your Honor, it's not alleged that the fees are excessive in amount. I mean, both sides, that's simply not an issue in the case, and that's why they qualify as genuine regulatory fees. So the issue of being genuinely responsive, that's the standard that ours garage gives us. What this Court said in its prior opinion, I think, citing one of the American Trucking Association cases, was that that mean, that simply means that the fee justification not be a pretext and that there be a logical connection between the provision and a safety concern. Kagan. I have a question about the safety concerns. It seems to be assumed by the district court and by you and perhaps even by CTTA that property issues are safety issues, i.e., thefts and, you know, damage to property and so on. Is that your assumption, and is that a necessary assumption? If the property is the car, I think that's clear. That is our assumption, and I don't think anybody would dispute that. Part of the safety concern is to avoid car theft. That the car be safe. I'm sorry? Not only that people be safe, but that the car be safe. Correct. That the car not be damaged. That people not steal things from it, inside it. That's – I think one could reasonably read it that far, but I don't think this case requires the Court to get to that point. I think that all that this Court said in its prior opinion is that there be a logical reason that stealing cars or banging up cars or whatever is a safety risk. It's a safety risk, and that – we would submit that it makes perfect common sense that, for example, if maybe a headlight gets bashed in in the course of the tow, that presents safety issues. Some types of damage may be purely cosmetic to the vehicle, but other types of damage would have legitimate safety ramifications. The theft of the car is a safety issue, and another reason that that is true is that illegal tows, which include outright car thefts, sometimes the tow is a mistake and it's illegal in that, you know, without malice, but sometimes it is basically a car theft. What the – what I think the Ninth Circuit in the Tillerson cases and other circuits as well have accepted is that that increases the risk that, for example, the car owner will come back in the process of the tow. And, you know, as – I know, but I – the reason I was asking the question is it starts getting attenuated if the theft itself is not a safety concern. If the theft itself is not a safety concern? If one assumes that the theft itself is a safety concern, then you don't have to go there. You don't have to go into this stuff about, you know, what will happen if somebody steals your car. You don't have to get it to somebody that's going to hurt somebody. So it seems to me that one thing to resolve is whether the property intrusions are themselves safety concerns. Certainly it is our view that the – that the theft of the car is a safety concern standing alone. And my point was simply that, in addition, illegal tows can spawn other safety concerns which are of a more sort of physical fisticuffs, as Judge Hawkins said. How about the brochure and the recordkeeping provisions? The brochure – Safety or not subject to? Both of – our view is that all of these are subject to the safety exception. They are – now, to be sure, the brochure imposes a minimal financial cost on the business because the brochure is produced by the police. It is provided by the police to the tow company. And, in fact, I think the ordinance even requires the police to provide a stand or some sort of thing to put the brochures on. So the financial impact is minimal, but at least arguably it impacts the service to be provided by the carrier. The connection between that and safety is – well, the primary way, in my view, is deterrence, that it deters the company from taking illegal actions when it knows that the car owner is going to be provided with the law which may show the actions to be illegal. What is it in the brochure? What is it about? It's a summary of – it's a summary of State law concerning towing. That's – the police department is required to produce it. Not necessarily just involuntary towing. I believe the ordinance requires towing involuntary and voluntary. I mean, I don't think it's confined to involuntary. Some of those regulations – well, presumably the regulations all have to be themselves valid or they couldn't be in there because they'd be preempted. Yeah. These are State-level regulations. Whatever they are, they're – I mean, if they're preempted, then they're preempted. But if they're in there, they're presumptively valid. Correct. Correct. So does the brochure tell the person whose car was towed that they can file a complaint? There's nothing in the record in that. And just going off of my recollection, I – from the terms of the ordinance, I don't recall that the ordinance specifies that the brochure must say that. Now, we do know there has to be a complaint procedure, which itself is tied to safety, both because it can reduce confrontations, potentially anger. So how does the vehicle owner learn about the complaint procedure? If the vehicle owner wishes to make a complaint, then, to the company, then presumably the vehicle owner, this would happen at the tow lot. This isn't spelled out in the regulations, but I think it's safe to assume that the company is required to have the complaint procedure and the vehicle owner would say, you know, would simply make the complaint at that time. I don't believe there's any – I don't believe that the city has gone to the fine-tooth comb specifying that not only must the company have a complaint procedure, but it must advise the car owner in writing of the existence of the complaint procedure. How does the complaint procedure relate to safety? Well, if there's a way to have a complaint heard by the company, then there is less likelihood that the car owner, who may be very angry about the tow, who may believe that it was illegal, that there's less likelihood of some sort of angry, potentially violent altercation. And also the – Even though the brochure says nothing about that? I'm sorry? Even though the brochure says nothing about that? Nothing about? Yes. I thought I heard you earlier say that the brochure does not alert a person whose car is being towed to the company's complaint procedure. It is correct. I'm not recalling that the brochure is required to go to that level of detail. The purpose of the brochure is to advise the car owner of the State laws relating to towing, and that can impact safety because it would – as a deterrent effect. Going to the complaint procedure, that can impact safety not only by reducing confrontations, but also by alerting the company to issues about what its driver may be doing. So you're saying that there's a complaint procedure, that they can file a complaint. How does that avoid the confrontation and the, you know, the anger that might ensue from having your car towed? What I'm – what I'm suggesting is that they're required to have a posting of their complaint procedure, or they're required to give them some information that there's a complaint procedure. You know, you complain to the city about what happened or whatever, but apparently there's nothing like that. Well, what I'm suggesting is that the vehicle owner, when he's at the tow yard trying to pick up his car, would make the – if he has a complaint about the manner in which the tow truck driver towed his car, if he has a complaint about the condition that his car is in at the time that he's picking it up, that he would make that complaint at the time to the tow company, and the tow company is required to have a complaint procedure, and to – and to have some process to allow the car owner to register their dissatisfaction verbally or in writing, whatever it may be, to make rather than utterly shutting out that complaint and frustrating the owner. The California law can only regulate rates for towing for – for invalid towing – for involuntary towing, right? Correct. So therefore, the maximum – what is in the brochure has to be about involuntary towing, because any rate – maximum rate for voluntary towing wouldn't be valid anyway. To the extent the brochure is dealing with rate issues, the brochure may also deal with other issues, because there are any number of State laws concerning towing, not necessarily – you know, the State hasn't only addressed rate issues. It has also addressed other issues about towing. For example, in the Ninth Circuit's Tillerson cases – well, the Tillerson v. City of San Diego involved a vehicle code provision which specified that when there is a nonconsensual tow from private property, the tow can only occur if the private property area has been posted at least 24 hours in advance as a judge. That's nonconsensual again. I'm sorry? That's, again, nonconsensual. That is nonconsensual, but it's – Well, where is the complaint proceeding in this ordinance? Where is the complaint procedure? I'm sorry? In the ordinance. It would be within 30.1. Pardon me. I couldn't find it, which is why I'm asking. Well, I know it's mentioned in the business plan requirement. That's correct, in the business plan requirement. Where is the provision for business plan? 3052. 3052. A description of the applicant's business plan, including, dot, dot, dot, a system for handling complaints that is acceptable to the chief of police. Did the chief issue some requirements for what's an acceptable complaint system? I do not – the record doesn't say, and I don't know of my own personal knowledge whether there is a – Do complaints have to relate to this permitting statute or about anything? Suppose the complaint says you charge me too much. I think realistically, some people are going to make complaints. I understand that. Which have merit and some are not. I mean, if they don't have to have a complaint system for that, then if somebody files with it saying, you know, I'm not listening to you, then there's – so the question is what is this – what's covered by this? Do we know that? There's nothing in the record on that. And I'm not aware of regulations which have been promulgated to, you know, to fill in the gaps. It's all basically a dead letter, isn't it? This whole – this subsection 4 that you're standing up here and vigorously defending seems to be a total dead letter. The business plan? Nothing's happening under it. The police view it as having some importance or some teeth, whether in terms of – you know, they have – they do have concerns about, you know, where the tow lots are going to be located. Does anybody read this? Read these plans? Do we have any evidence that anybody looks at it? The record – the short answer is the record doesn't contain anything. I mean, it's different about names and signatures and makes and all that. But if this is just sitting in a drawer, what's the point? You're standing up here and even trying to defend it. Well, Your Honor, what the record does contain is the declaration of, I think it's Sergeant Coggin, and he talks about the business plan as being important in terms of, for example, it could disclose that the type of vehicles, tow vehicles, that the business plans to use are not adequate, are not strong enough to tow a car or vehicle of the – you know, let's say a truck. If you're going to tow trucks, you need an especially large, robust tow truck. And he talks about, and it's unrebutted, that the business plan may flesh out those types of issues. What about the recordkeeping requirements? That's – that aids in investigations. So if there is some – if the police are trying to investigate, let's say, car theft, their ability to investigate a claim of car theft is going to be heightened and improved – and again, this is within the Coggin declaration – if there are records of tows. Because if it is towed, then right away that will rule it out as an actual theft. Or if there's some allegation that the tow company, you know, maliciously interfered with a car, maybe a purse was stolen out of the car, the fact that the record shows that the tow company did indeed tow that car on the night that it vanished will certainly aid in that investigation. And by aiding in investigations, obviously, there's a deterrent effect on these types of crimes happening in the first place. I see that I'm almost out of time, unless the Court has anything else. I have nothing further. Roberts. Thank you. Thank you. Your Honor, just real briefly, in response to the question about what's in the brochure, the bottom of ER, page 121, top of 122, it's in section 3055.2b, brochure shall contain a summary of California law, maximum rates that can be charged, and responsibilities of all parties who participate in private property towing. So Judge Marzan is correct, it is nonconsensual. I mean, it necessarily can only involve things that are themselves not preempted. Right? I agree, yes. So therefore, your position has to be that telling people what the law is is not sufficiently connected to the otherwise valid regulation as to be nonpreempted. Right, because advising people of their rights under California law doesn't make them safer. It may make them a better consumer or more able to go into court. Well, but you see, that's what I'm saying. These are all have to be statutes that are themselves not preempted. Agreed. And we're not containing the 22658. Right. So therefore, why doesn't the fact that you know the things that are safety regulations or that are not preempted mean that – in other words, if they're not preempted – if they're nonpreempted statutes, then requiring that you tell people about it is also nonpreempted, right? No. Congress has said you can't. No, nonpreempted, totally nonpreempted. If it's simply not preempted, i.e., because it doesn't relate to a rate or service, then telling people about it is also not preempted. I disagree, because that's the provision of a service. Congress has said States or locals, you can't mandate the provision of a service, i.e., educating consumers on their rights. As to things that are themselves not – as to things that are themselves not services? As to anything. It's not the job of a towing company to be a consumer advocate. Okay. Thank you, counsel. We appreciate your arguments this morning. The matter is submitted.
judges: Hawkins, Paez, Berzon